848 So.2d 172 (2003)
Ronald Chris FOSTER a/k/a Ron Chris Foster
v.
STATE of Mississippi.
No. 95-DR-00750-SCT.
Supreme Court of Mississippi.
February 19, 2003.
Silas W. McCharen, James W. Craig, Andre De Gruy, Jackson, attorneys for appellant.
Office of the Attorney General by Marvin L. White, attorneys for appellee.
EN BANC.

ON MOTION FOR REHEARING
WALLER, Justice, for the court.
¶ 1. The motion for rehearing is granted. The previous order and dissenting statements are withdrawn, and these opinions are substituted therefor.
¶ 2. This matter is before the Court on the Successive Application for Leave to File Motion to Vacate Death Sentence and Motion for Stay of Execution filed by Ronald Chris Foster, the response filed by the State of Mississippi and the reply brief filed by Foster. Foster's direct appeal from his conviction for capital murder and sentence of death was first affirmed by this Court in Foster v. State, 639 So.2d 1263 (Miss.1994), cert. denied, 514 U.S. 1019, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995). Foster then filed for post-conviction relief, which was denied by this Court. *173 See Foster v. State, 687 So.2d 1124 (Miss. 1996), cert. denied, 521 U.S. 1108, 117 S.Ct. 2488, 138 L.Ed.2d 996 (1997). On post-conviction, Foster claimed ineffective assistance of counsel based on trial counsel's failure to (1) investigate adequately and present mitigation evidence at the sentencing phase of his trial; (2) present information about Foster's upbringing and childhood; (3) request a transfer of his case to youth court; (4) raise on direct appeal issues pertaining to the circuit court's denial certain jury instructions; and (5) object to certain aggravating factors.
¶ 3. Foster then sought habeas corpus relief in the United States District Court, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court. See Foster v. Johnson, 293 F.3d 766 (5th Cir.2002), cert. denied sub nom Foster v. Epps, 537 U.S. 1054, 123 S.Ct. 625, 154 L.Ed.2d 532 (2002), rehearing denied, 537 U.S. 1098, 123 S.Ct. 816, 154 L.Ed.2d 766 (2003). Foster's federal remedies were exhausted when the Supreme Court denied his petition for writ of certiorari.
¶ 4. The State of Mississippi then filed a motion to reset execution date. This Court granted the motion by order dated December 10, 2002, and set Foster's execution date for January 8, 2003.
¶ 5. On January 2, 2003, Foster filed his Successive Application for Leave to File Motion to Vacate Death Sentence and Motion for Stay of Execution with this Court. The State filed its response.
¶ 6. On January 6, 2003, Governor Ronnie Musgrove issued a reprieve with respect to Foster's execution. Governor Musgrove stated that the United States Supreme Court, in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), "declared that the execution of persons who are mentally retarded is unconstitutional and the issue of whether Foster is mentally retarded has not been specifically addressed under the guidelines set forth in the Atkins decision...." Governor Musgrove further stated that "there is pending before the United States Supreme Court a petition to hear a case concerning the constitutionality of the application of the death penalty to juvenile offenders, those persons under the age of 18, and a decision by the highest court in the land whether to consider reviewing the specific issue of whether a 17 year-old offender such as Foster can be constitutionally sentenced to death will be made in a matter of weeks...." The Governor finally stated that the reprieve would be in effect until there was "a determination by the Mississippi Supreme Court and the United States Supreme Court as to the application of the constitutional issues set forth above to the Foster matter."
¶ 7. The State argues that Foster's request is barred as a successive application, is untimely filed, and none of the statutory exceptions are applicable. See Miss.Code Ann. §§ 99-39-5(2) & 27(9) (Supp.2002).

I. WHETHER FOSTER SHOULD BE AFFORDED AN ATKINS HEARING.
¶ 8. Foster first alleges that he is mentally retarded and that, under Atkins, his execution is prohibited by the Eighth Amendment to the United States Constitution. As the Supreme Court stated in Atkins:
To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded. In this case, for instance, the Commonwealth of Virginia disputes that Atkins suffers from mental retardation. Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders *174 about whom there is a national consensus. As was our approach in Ford v. Wainwright, with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." 477 U.S. 399, 405, 416-417, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).
Atkins, 536 U.S. at 317, 122 S.Ct. at 2250. The Court noted that "[t]he statutory definitions of mental retardation are not identical, but generally conform to the clinical definitions set forth in n. 3, supra," id. at 317 n. 22, 122 S.Ct. 2242, as stated below:
The American Association of Mental Retardation (AAMR) defines mental retardation as follows: "Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992). The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. Id., at 42-43.
Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. at 2245 n. 3.
¶ 9. Foster relies primarily on a psychological evaluation performed on December 31, 2002, by Dr. Marc L. Zimmerman. Dr. Zimmerman stated that he administered the Wechsler Adult Intelligence scale III, Benton Visual Retention Test and the screening test for the Luria-Nebraska Neuropsychological Battery-Adult form. Dr. Zimmerman states that Foster's performance on the Wechsler
was in the mildly mentally retarded range. Specifically, his verbal IQ was 68 (within the second percentile) and his performance score was 59 (the .03 percentile). His full scale score is 62 (the first percentile). His sister's responses to the Vineland indicate that he is functioning and always has functioned at an adaptive level consistent with the Wechsler scores. The tests of neuropsychological functioning are consistent with a diagnosis of mental retardation.
¶ 10. Foster also relies on the affidavit of his sister, Sandra Foster. Dr. Zimmerman administered the Vineland Adaptive Behavior scales to Sandra Foster. Sandra Foster states that "[w]hen Ron was in Vine Elementary School in Aberdeen, the school tested Ron to decide what level he should attend at the school. After the test, Ron was placed in classes in the Annex, which was for the remedial or special classes. This was when Ron was in *175 the third and fourth grades. Ron attended special classes from that time until he left school."
¶ 11. The State relies on an IQ test it states was performed at Whitfield in 1990, where Foster was allegedly shown to have an IQ of 80. This test result has been cited by this Court, by the United States District Court, by the United States Court of Appeals, and by Foster himself in pleadings before this Court. At this point the source of this IQ score is a mystery, as it cannot be found in Foster's appeal record. Even assuming that Foster's IQ is 80, that determination alone does not address all the criteria of Atkins. It is clear that a finding of retardation under Atkins includes intellectual functioning and numerous other factors. It is also clear that no judicial determination has been made as to Foster on the factors set out in Atkins.
¶ 12. We find that Atkins is an intervening decision under Miss.Code Ann. § 99-39-27(9) (Supp.2002), such that the procedural bars raised by the State, that of timeliness and successive application, are not applicable here. We further find that, under the Eighth Amendment as construed by the Supreme Court in Atkins, Foster is entitled to an evidentiary hearing on the issue of his alleged mental retardation. Foster has the burden of proof at the evidentiary hearing. See Miss.Code Ann. § 99-39-23(7) ("no relief shall be granted under this chapter unless the prisoner proves by a preponderance of the evidence that he is entitled to such").
¶ 13. After careful consideration we find that Foster should be granted leave to proceed in the trial court on the sole issue of whether he is mentally retarded such that he may not be executed under Atkins v. Virginia. To that end the standard or definition of mental retardation shall be that enunciated by the Supreme Court in Atkins, especially the American Psychiatric Association's definition of mental retardation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders IV 39-46 (4th ed.1994). We further hold that the Minnesota Multiphasic Personality Inventory-II (MMPI-II) is to be administered since its associated validity scales make the test best suited to detect malingering. See id. at 683 (defining malingering as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs"). See also United States v. Battle, 235 F.Supp.2d 1301, 1307 (N.D.Ga.2001) (explaining MMPI and its validity scales and stating that "[t]he MMPI is generally agreed to be difficult to cheat on without getting caught"). Foster must prove that he meets the applicable standard by a preponderance of the evidence pursuant to Miss.Code Ann. § 99-39-23(7). This issue will be considered and decided by the circuit court without a jury.

II. WHETHER FOSTER'S AGE AT THE TIME OF THE CRIME PROHIBITS THE IMPOSITION OF THE DEATH PENALTY.
¶ 14. Foster next argues that his execution is prohibited by the Eighth Amendment because he was seventeen years old at the time he killed George Shelton. Foster argues that the same national consensus that caused the United States Supreme Court to ban the execution of the mentally retarded in Atkins also exists in opposition to execution of those who committed their crimes as juveniles, and this Court should recognize such a prohibition at this time. This Court finds that the United States Supreme Court has prohibited the execution of those who committed their crimes at age *176 fifteen in Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), but declined in Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), to do so for those who committed their crimes at age sixteen or seventeen. The United States Supreme Court recently declined to grant relief on this issue. See In re Stanford, ___ U.S. ___, 123 S.Ct. 472, 154 L.Ed.2d 364, rehearing denied, ___ U.S. ___, 123 S.Ct. 715, 154 L.Ed.2d 649 (2002). This issue is without merit.

CONCLUSION
¶ 15. Ronald Chris Foster's Successive Application for Leave to File Motion to Vacate Death Sentence and Motion for Stay of Execution is granted in part to the extent that Foster is granted leave to proceed in the trial court on the issue of his alleged mental retardation pursuant to Atkins v. Virginia. Foster's successive application is denied in all other respects.
¶ 16.POST-CONVICTION RELIEF GRANTED IN PART, DENIED IN PART.
PITTMAN, C.J., COBB AND CARLSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. McRAE, P.J., AND EASLEY, J., NOT PARTICIPATING.
SMITH, Presiding Justice, concurring in part and dissenting in part:
¶ 17. I concur with the majority only to the extent that it denies post-conviction relief to Ronald Chris Foster. However, I respectfully dissent from the majority's granting Foster leave to seek post-conviction relief in the trial court based on his alleged mental retardation and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).
¶ 18. The Post-Conviction Collateral Relief Act places the burden of proof upon Foster to sufficiently prove that he is indeed mentally retarded to such an extent that he may avoid the death penalty. Miss.Code Ann § 99-39-23(7) (Supp.2002). In my view Foster has failed to provide sufficient proof of his mental retardation in accordance with the guidelines of the Supreme Court as stated in Atkins. Thus, he has not met his burden of proof so as to entitle him to another hearing before the trial court. This issue is procedurally barred pursuant to Miss.Code Ann. § 99-39-5(2) & -27(9) (Supp.2002), and none of the statutory exceptions are applicable including the intervening decision of Atkins. Foster thoroughly pursued at trial level, initial appeal, and on a prior post-conviction relief petition the issue of mental retardation sufficiently to withstand the guidelines and pronouncements of Atkins. Post-conviction remedy proceedings are statutorily designed to make known to the Court "facts not known at time of judgment." Foster v. State, 687 So.2d 1124, 1129 (Miss.1996); Williams v. State, 669 So.2d 44, 52 (Miss.1996). The proof in this record sufficiently supports that Foster is not mentally retarded to such an extent as to require an additional Atkins hearing. Foster's successive application for post-conviction relief should be dismissed in its entirety.
¶ 19. For these reasons, I respectfully concur in part and dissent in part.