936 So.2d 89 (2006)
STATE of Louisiana
v.
Jimmy M. TURNER.
No. 2005-KA-2425.
Supreme Court of Louisiana.
July 10, 2006.
Dissenting Opinion July 11, 2006.
Rehearing Denied September 1, 2006.
*91 Charles C. Foti, Jr., Attorney General, Kristi D. Hagood, Assistant Attorney General, Don M. Burkett, District Attorney, for appellant.
Glass & Reed, John Wilson Reed, New Orleans, Wellborn Jack, Jr., Elton B. Richey. Jr., Shreveport, for appellee.
Dissenting Opinion of Justice Johnson, July 11, 2006.
KNOLL, Justice.
This matter is before us under our original appellate jurisdiction, pursuant to La. Const. Art. V, § 5, from the trial court ruling, which declared La.Code Crim. Proc. art. 905.5.1 unconstitutional. For the following reasons we reverse the trial court and hold the trial court erred *92 in finding a jury determination of the factual issue of whether a capital defendant is mentally retarded offends constitutional guarantees. The trial court additionally erred in finding the codal article unconstitutionally vague, that it violates the defendants Sixth Amendment right to compulsory process and that it requires the defendant to relinquish his rights under the Fifth Amendment, because those rulings are speculative and hypothetical.

FACTS AND PROCEDURAL HISTORY
Defendant is charged by bill of indictment with two counts of first-degree murder. The State has filed its notice of intent to seek the death penalty alleging the murders occurred while defendant was engaged in the perpetration or attempted perpetration of armed robbery and that the defendant killed more than one person.
Defendant claims he is mentally retarded and consequently, is not subject to a sentence of death.[1] Defendant filed, inter alia, a motion to declare unconstitutional La.Code Crim. Proc. art. 905.5.1, which establishes a procedure for a defendant to demonstrate mental retardation thereby precluding the imposition of capital punishment.
The trial court issued a written ruling declaring La.Code Crim. Proc. art. 905.5.1 unconstitutional. The trial court found the statute violates the defendant's due process rights and the Eighth Amendment by creating an intolerable risk that mentally retarded persons may be executed; that article 905.5.1 G is unconstitutionally vague; that article 905.5.1 G violates the defendant's Sixth Amendment right to compulsory process; and article 905.5.1 E is unconstitutional as it conditions a defendant's exercise of one constitutionally protected right upon the relinquishment of another constitutionally protected right.[2]

DISCUSSION
In Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the United States Supreme Court held that executing mentally retarded offenders is excessive under the Eighth Amendment. Atkins, 536 U.S. at 321, 122 S.Ct. at 2252. However, while extending Eighth Amendment protection to the mentally retarded, the Supreme Court left the imposition of the new rule to the states. Id., 536 U.S. at 317, 122 S.Ct. at 2250. In the next legislative session following the rendering of Atkins, the Louisiana Legislature enacted 2003 La. Acts 698, codified at La.Code Crim. Proc. art. 905.5.1. This article provides a procedure to be used in the event a capital defendant raises a claim of mental retardation.
La.Code Crim. Proc. art. 905.5.1 provides:
A. Notwithstanding any other provisions of law to the contrary, no person who is mentally retarded shall be subjected to a sentence of death.
B. Any capital defendant who claims to be mentally retarded shall file written notice thereof within the time period for filing of pretrial motions as provided by Code of Criminal Procedure Article 521.

*93 C. (1) Any defendant in a capital case making a claim of mental retardation shall prove the allegation by a preponderance of the evidence. The jury shall try the issue of mental retardation of a capital defendant during the capital sentencing hearing unless the state and the defendant agree that the issue is to be tried by the judge. If the state and the defendant agree, the issue of mental retardation of a capital defendant may be tried prior to trial by the judge alone.
(2) Any pretrial determination by the judge that a defendant is not mentally retarded shall not preclude the defendant from raising the issue at the penalty phase, nor shall it preclude any instruction to the jury pursuant to this Section.
D. Once the issue of mental retardation is raised by the defendant, and upon written motion of the district attorney, the defendant shall provide the state, within time limits set by the court, any and all medical, correctional, educational, and military records, raw data, tests, test scores, notes, behavioral observations, reports, evaluations, and any other information of any kind reviewed by any defense expert in forming the basis of his opinion that the defendant is mentally retarded.
E. By filing a notice relative to a claim of mental retardation under this Article, the defendant waives all claims of confidentiality and privilege to, and is deemed to have consented to the release of, any and all medical, correctional, educational, and military records, raw data, tests, test scores, notes, behavioral observations, reports, evaluations, expert opinions, and any other such information of any kind or other records relevant or necessary to an examination or determination under this Article.
F. When a defendant makes a claim of mental retardation under this Article, the state shall have the right to an independent psychological and psychiatric examination of the defendant. A psychologist conducting such examination must be licensed by the Louisiana State Board of Examiners of Psychologists. If the state exercises this right, and upon written motion of the defendant, the state shall provide the defendant, within time limits set by the court, any and all medical, correctional, educational, and military records, and all raw data, tests, test scores, notes, behavioral observations, reports, evaluations, and any other information of any kind reviewed by any state expert in forming the basis of his opinion that the defendant is not mentally retarded. If the state fails to comply with any such order, the court may impose sanctions as provided by Article 729.5.
G. If the defendant making a claim of mental retardation fails to comply with any order issued pursuant to Paragraph D of this Article, or refuses to submit to or fully cooperate in any examination by experts for the state pursuant to either Paragraph D or F of this Article, upon motion by the district attorney, the court shall neither conduct a pretrial hearing concerning the issue of mental retardation nor instruct the jury of the prohibition of executing mentally retarded defendants.
H. (1) "Mental retardation" means a disability characterized by significant limitations in both intellectual functioning and adaptive behavior as expressed in conceptual, social, and practical adaptive skills. The onset must occur before the age of eighteen years.
(2) A diagnosis of one or more of the following conditions does not necessarily constitute mental retardation:

*94 (a) Autism.
(b) Behavioral disorders.
(c) Cerebral palsy and other motor deficits.
(d) Difficulty in adjusting to school.
(e) Emotional disturbance.
(f) Emotional stress in home or school.
(g) Environmental, cultural, or economic disadvantage.
(h) Epilepsy and other seizure disorders.
(i) Lack of educational opportunities.
(j) Learning disabilities.
(k) Mental illness.
(l) Neurological disorders.
(m) Organic brain damage occurring after age eighteen.
(n) Other handicapping conditions.
(o) Personality disorders.
(p) Sensory impairments.
(q) Speech and language disorders.
(r) A temporary crisis situation.
(s) Traumatic brain damage occurring after age eighteen.
In determining the constitutionality of a statute, it is important to keep certain principles in mind. A statute is presumed to be valid and its constitutionality should be upheld whenever possible. State v. Thomas, 04-559, p. 3 (La.1/19/05), 891 So.2d 1233, 1235; State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.Rev.Stat. 14:3.

Due Process and Eighth Amendment
In holding this article unconstitutional, the trial court held it violates the due process and Eighth Amendment rights of a defendant by creating an intolerable risk that mentally retarded persons may be executed. The trial court found the issue of mental retardation should be determined by the trial judge to minimize the risk that a "death-qualified" jury will make an erroneous finding and sentence a mentally retarded person to death.
The trial court premised this holding in part on its finding that the Legislature's enactment of La.Code Crim. Proc. art. 905.5.1 was a significant departure from the procedure set forth by this Court in State v. Williams, 01-1650 (La.11/1/02), 831 So.2d 835. We decided Williams in the interim between the Supreme Court's Atkins decision and the Louisiana Legislature's enactment of law in accordance with Atkins. Our decision in Williams concerned the defendant's appeal of his capital conviction and sentence of death. There the defendant assigned as error his sentence, alleging he was mentally retarded and execution would violate the Eighth Amendment. Prior to this defendant's trial, mental retardation was merely a factor in mitigation. Post Atkins, mental retardation is a complete prohibition against imposition of the death penalty. Williams, 01-1650 at p. 27, 831 So.2d at 856-857. Thus, we found a remand of the case for a full evidentiary hearing to determine whether or not the defendant was mentally retarded was warranted. The specifics of remanding a case on an Atkins claim was res nova and thus, we set out guidelines for evidentiary hearings to determine mental retardation. Those guidelines, inter alia, instructed the trial courts to treat the issue procedurally as they would pre-trial competency hearings for which statutory criteria already existed. Id., 01-1650 at p. 29, 831 So.2d at 858. Louisiana's procedure for determining a defendant's mental incapacity to proceed is *95 set forth in La.Code Crim. Proc. art. 641 et seq. In adapting this procedure for determination of mental retardation as a bar to a sentence of death, we noted:
The code . . . provides for a contradictory hearing, with LSA-C.Cr.P. art. 647 stating:
The issue of the defendant's mental capacity to proceed [or in this case, the issue of whether or not the defendant is mentally retarded under applicable standards] shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense and by the district attorney.

Williams, 01-1650 at p. 30, 831 So.2d at 859.
In the case sub judice, the trial court looked to Williams and State v. Dunn, 01-1635 (La.11/1/02), 831 So.2d 862[3] to support its finding that an evidentiary hearing is necessary prior to trial for a determination of whether the capital defendant is mentally retarded. The trial court erred in finding our jurisprudence is controlling over the Legislature's subsequent enactment of statutory procedure for determination of mental retardation claims by capital defendants. We specifically noted that we adopted those guidelines in the interim between our decision in Williams and legislative action on the subject. Williams, 01-1650 at p. 29, 831 So.2d at 858. The trial court found support for its determination by citing to State v. Manning, 03-1982, p. 73 (La.10/19/04), 885 So.2d 1044, 1107, n. 46. In that review of the defendant's death sentence, we found no merit to defendant's claim that the possibility he may be mentally retarded required a remand for an evidentiary hearing. Referring to the recently enacted La.Code Crim Proc. art. 905.5.1, we stated in a footnote that "in a significant departure from the procedures the Court established in Williams, the new legislation calls for the jury to make the determination of whether a defendant is exempt from capital punishment by reason of mental retardation." Id. There is nothing in this observation that lends support to a finding that the Legislature's decision to leave that determination to a jury rather than a pre-trial determination by the trial judge violates the defendant's due process and Eighth Amendment rights.
The trial court found the statutory procedure which permits the issue of mental retardation to be made by the jury creates an unacceptable risk of erroneous findings. The trial court supported this determination relying upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and State v. Nomey, 613 So.2d 157 (La.1993). In Jackson, the Supreme Court held the Due Process Clause entitles a defendant to a judicial determination of the voluntariness of any inculpatory statements before the state may introduce the statements at trial, in part because the reliability of a confession has nothing to do with its voluntariness. Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 *96 L.Ed.2d 908 (1964). It is difficult to see how the voluntariness of a confession relates to the issue of mental retardation. The trial court must exclude a confession in its entirety, where it was obtained involuntarily, thereby preventing the state from introducing evidence often critical to its case. The issue of mental retardation is an exemption from capital punishment, but not an exemption from culpability. Because the determination of insanity, which exempts an offender from criminal responsibility, is left to the jury's determination, we find no constitutional infirmity with the Legislature's decision to allow juries to decide the issue of mental retardation with regard to capital defendants.
In holding La.Code Crim. Proc. art. 905.5.1 unconstitutional, the trial court analogized determination of mental retardation with determination of competency to stand trial. Observing that this Court has held prosecution of a defendant who lacks mental capacity to understand the nature and object of the proceedings against him and to assist in his defense violates his due process rights, Nomey, 613 So.2d at 161, the trial court found prosecuting a mentally retarded person before a death-qualified jury violates his due process rights. We find the trial court's analogy is faulty. As an initial matter, equating competency to stand trial with mental retardation as an absolute bar to subjection to the death penalty is a stretch at best. Notably, defendants with IQ scores ranging from 47 to 62 have been shown competent to stand trial. State v. Brooks, 541 So.2d 801, 807 (La.1989); State v. Charles, 450 So.2d 1287, 1289 (La.1984). A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense may not be subject to trial. Nomey, 613 So.2d at 161. In Nomey, we found the defendant's due process rights were violated because he was deprived of the protective procedures set forth in our criminal code. Id. When the lower courts failed to adhere to the scheme enacted by our Legislature to protect a defendant's right not to be tried or convicted while incompetent, the defendant's due process rights were violated. The law is clear that in the situation when the question of the defendant's mental incapacity to proceed is raised, no further steps in the criminal prosecution shall be taken until the defendant is found to have the mental capacity to proceed. Id., at 161-162; La.Code Crim. Proc. art. 642. In Nomey, we found the lower courts erred in allowing the defendant to plead guilty after his petition for the appointment of a sanity commission but prior to the trial court's holding of a sanity hearing. Nomey, 613 So.2d at 162. In the determination of whether a capital defendant is mentally retarded, the Legislature has chosen to protect the defendant's Eighth Amendment right not to be subject to the death penalty by enacting a procedure where that issue is either decided by the jury during the capital sentencing phase or prior to trial by the judge alone. La.Code Crim. Proc. art. 905.5.1 C(1).
When delegating the issue of mental retardation to the jury, the Legislature evidently equated it with a plea of not guilty by reason of insanity. Hearing on House Bill No. 1017 before the House Committee on Administration of Criminal Justice, May 21, 2003, at p. 9. Determination of whether a defendant was insane at the time of the conduct in question and thus exempt from culpability is a question for the jury. State v. Roy, 395 So.2d 664, 666 (La.1981). If the State may consign to a jury the complex factual and legal question of whether a defendant suffers from a mental disease or defect rendering him *97 incapable of distinguishing between right and wrong and thereby exempting him from criminal responsibility altogether, La. Rev.Stat. 14:14, then, a fortiori, the State may assign to a jury the task of determining whether defendant is mentally retarded and exempt, not from criminal culpability, but from the death penalty.
Implicit in the trial court's ruling is the belief that the jury is unreliable for deciding whether the defendant is mentally retarded. The court adopted the defendant's argument that the United States Supreme Court has long recognized that capital juries may not be the best assessors of mental retardation evidence and that the condition is frequently perceived as a "two-edged sword." Penry v. Lynaugh, 492 U.S. 302, 324, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)(overruled in part by Atkins)(mental retardation is "a two-edged sword: it may diminish [the defendant's] blameworthiness for his crime even as it indicates that there is a probability that he will be dangerous in the future"); Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (noting that "the jury might well have given [the defendant's] low I.Q. evidence aggravating effect in considering his future dangerousness, not only as a matter of probable inference from the evidence but also because the prosecutor told them to do so.").
We find the trial court's reading of Penry and Tennard far too expansive to support its decision that a capital defendant's due process and Eighth Amendment rights are violated by submission of the issue of mental retardation to the jury. Penry concerned a challenge to Texas's capital trial sentencing phase, where at the close of the penalty hearing the jury decided the sentence to be imposed by answering three "special issues."[4] If the jury unanimously answered yes to each issue, the trial court was required to sentence the defendant to death. Penry challenged his sentence of death arguing his mitigating evidence of mental retardation and childhood abuse had relevance to his moral culpability beyond the scope of the special issues, and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. Penry, 492 U.S. at 322, 109 S.Ct. at 2948. The Supreme Court agreed. It held the absence of instructions informing the jury it could consider and give effect to the mitigating evidence of defendant's mental retardation and abused background by declining to impose the death penalty deprived the jury of a vehicle for expressing its "reasoned moral response" to that evidence in rendering its sentencing decision, as required pursuant to the Eighth and Fourteenth Amendments under Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Penry, 492 U.S. at 328, 109 S.Ct. at 2952. It reasoned, inter alia, that although the mitigating evidence concerning the defendant's mental retardation was relevant to the second special issue, it *98 was relevant only as an aggravating factor. Id., 492 U.S. at 323, 109 S.Ct. at 2949. Thus, defendant's mental retardation was a two-edged sword: it may diminish his blameworthiness for his crime even as it indicates there is a probability he will be dangerous in the future, the issue posited by the second special issue in the Texas capital sentencing scheme under review. The second special issue did not provide a vehicle for the jury to give mitigating effect to defendant's evidence of mental retardation. Penry, 492 U.S. at 324, 109 S.Ct. at 2950.
We find nothing in the Supreme Court's opinion to support a determination that a jury is unreliable for deciding the factual issue of whether the defendant is mentally retarded. Rather, the evolving jurisprudence of the United States Supreme Court initially held juries must be allowed to give mitigating effect to the evidence of mental retardation, but the Court refused to hold execution of mentally retarded people convicted of capital offenses was prohibited by the Eighth Amendment. Penry, 492 U.S. at 340, 109 S.Ct. at 2958. In Atkins, the Supreme Court overruled Penry in part, holding the Eighth Amendment prohibits the execution of the mentally retarded capital offender. The Court supported this holding by finding, first, there is a serious question as to whether either justification for the death penalty (retribution and deterrence of capital crimes) applies to mentally retarded offenders and second, there was risk the death penalty would be imposed in spite of factors which may call for a less severe penalty, in part because of the "lesser ability of mentally retarded defendants to make a persuasive showing of mitigation." Atkins, 536 U.S. at 318-320, 122 S.Ct. at 2251-2252. Thus, mental retardation is not a factor to be weighed in the jury's balance of aggravating and mitigating circumstances in sentencing, but is an absolute bar to capital punishment, due in part to its characterization as a two-edged sword. However, nothing in the United States Supreme Court's jurisprudence suggests that requiring the jury rather than the court to decide whether the defendant has established mental retardation violates Due Process or the Eighth Amendment.
In Tennard, the Supreme Court again addressed Texas's capital sentencing scheme; the issue was whether the scheme provided an appropriate vehicle for the jury to give effect to petitioner's evidence of low intelligence as a mitigating factor in imposing sentence. The Supreme Court found the federal circuit court of appeals had erred in denying the petitioner a certificate of appealability on this issue, finding the Texas Court of Criminal Appeals' application of Penry to the facts of Tennard's case was unreasonable. Tennard, 542 U.S. at 288, 124 S.Ct. at 2572. The Texas court's application of Penry to the facts of Tennard's case was unreasonable because of the suggestion that defendant's low IQ was irrelevant in mitigation but relevant to the special issue of whether he posed a future danger. Id., 542 U.S. at 289, 124 S.Ct. at 2572-73. Again, the issue was whether the jury was provided a constitutionally adequate vehicle for it to consider and give effect to the mitigating evidence.
We are aware that both commentators and jurists have expressed serious reservations about jurors deciding the issue of mental retardation at the penalty phase of capital trials. Peggy M. Tobolowsky, Atkins Aftermath: Identifying Mentally Retarded Offenders and Excluding them from Execution, 30 J. Legis. 77, 109 (2003) ("[P]lacing the Atkins mental retardation determination within the punishment proceeding could be confusing to jurors who *99 might misconstrue it as interrelated with the culpability issues before them or otherwise be balanced with or against such issues."); Murphy v. State, 54 P.3d 556, 575-577 (Okla.Crim.App.2002) (Chapel, J., concurring in result) (expressing concern about jurors' determination of mental retardation, during punishment phase, being improperly influenced by evidence that "can only improperly appeal to jurors' emotions and passions"), overruled by Blonner v. State, 127 P.3d 1135 (Okla. Crim.App.2006). Notwithstanding the concerns expressed by some commentators and courts, absolutely no jurisprudence suggests that requiring the jury rather than the court to decide whether the defendant has established mental retardation violates due process or a defendant's Eighth Amendment rights. Neither Atkins nor other controlling legal principles compel the selection of a specific fact finder regarding mental retardation or require the determination be made at a specific point in the adjudication process. Tobolowsky, at p. 112. As to any requirement that a trial judge should in all cases make an initial pretrial finding on the question of mental retardation, that policy choice, whether wise or unwise, is for the Legislature.

Vagueness
The trial court found paragraph G of article 905.5.1 unconstitutionally vague because it failed to define "fully cooperate" in the portion of the statute outlining the sanctions for a defendant's failure to meet his obligations at discovery. The court found article 905.5.1 G does not give a defendant of ordinary intelligence a reasonable opportunity to know what is prohibited when submitting to an examination by the State's expert, so that he may act accordingly, nor does the statute provide explicit standards for courts to apply in an effort to prevent arbitrary and discriminatory enforcement. Thus, it determined article 905.5.1 G cannot overcome the test for vagueness as set forth by the United States Supreme Court.
Initially, we observe it is well established that a vagueness challenge to a statute not involving First Amendment freedoms must be examined in the light of the facts of the case at hand and as applied to the particular defendant. Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857-1858, 100 L.Ed.2d 372 (1988); United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975). A defendant may not establish a statute is unconstitutionally vague by speculating about hypothetical conduct. State v. Sandifer, 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1332; Hill v. Colorado, 530 U.S. 703, 733, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000) (speculation about possible vagueness in hypothetical situations will not support a facial attack on a statute). Because the defendant did not establish the statute was vague as it pertained to his conduct, the trial court prematurely found the statute was unconstitutionally vague.
Notwithstanding our determination that the trial court acted prematurely in declaring the statute unconstitutionally vague, in order to provide guidance to the lower courts we address whether La.Code Crim. Proc. art. 905.5.1 G could be applied unconstitutionally. Under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of an accused. State v. David, 468 So.2d 1126, 1128 (La.1984). Simply stated, the statute must not contain a standard so vague that the public is uncertain as to the proscribed conduct and *100 the factfinder is unfettered by any legally fixed standards as to what is prohibited by the statute. State v. Boyd, 97-579, p. 3 (La.4/14/98), 710 So.2d 1074, 1076.
The trial court found the term "fully cooperate" does not give a defendant a reasonable opportunity to know what is prohibited nor does it provide explicit standards for the courts to apply to prevent arbitrary and discriminatory enforcement. However, the fact a statute's terms are subjective and susceptible to interpretation does not render it vague. Boyd, 97-579 at p. 3, 710 So.2d at 1076. Words used in statutes need not have the same precision as mathematical symbols. Id. Although article 905.5.1 contains no definition of "fully cooperate," the words used in the statute may be easily understood when "taken in their usual sense" and "with reference to the purpose of the provision." La.Rev.Stat. 14:3.
The sole purpose of the article is to provide a procedure to determine if an offender is mentally retarded and therefore ineligible for the death penalty. The phrase "fully cooperate" should be interpreted as to further the statute's purpose and specifically to comply with the mandates set forth in La.Code Crim. Proc. art. 905.5.1 D and F, which may require the defendant to submit to examination by state experts and to provide documentary evidence relating to his diminished mental capacity. The purpose of the independent psychological and psychiatric examination pursuant to 905.5.1 F is to determine whether or not the defendant is mentally retarded. Atkins, 536 U.S. at 317, 122 S.Ct. at 2250 ("Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders . . . ."). Because the Legislature requires the psychologist conducting the examination to be licensed by the Louisiana State Board of Examiners of Psychologists, it can be safely presumed such an expert can differentiate between an inability to cooperate, which may be expected from a person who is mentally retarded, from a failure to cooperate, which could be expected from a malingerer attempting to use the mental retardation exclusion from capital punishment. Under the facts presently before us, we find the trial court erred in determining La.Code Crim. Proc. art. 905.5.1 G is unconstitutionally vague.

Compulsory Process
The trial court also concluded that paragraph G of article 905.51 was unconstitutional because the sanctions for failure to comply with the discovery requirements prohibit the court from conducting a pretrial hearing concerning the issue of mental retardation and from instructing the jury about the prohibition of executing mentally retarded defendants. The court found:
Preclusion of defendant's entire defense of mental retardation for refusal to submit to or failure to "fully cooperate" during an examination by a State's expert is not narrowly tailored; thus, less restrictive or less intrusive sanctions must be available and implemented. Nor is this widely encompassing preclusion of an entire defense in furtherance of a compelling state need. It is true that the State has an interest in the orderly administration of justice and cooperation during State fostered examinations. However, the State's interest in promoting judicial efficiency and cooperation during such examinations does not outweigh a defendant's due process rights and Sixth Amendment right to present witnesses in his defense.
Record, vol. 6, pp. 1390-1391.
We find any attack on the sanctions that could attach when a defendant *101 fails to adhere to the procedures set out by the code article premature. In any event, notwithstanding use of the word "shall" when stating the sanction if a defendant does not comply with the discovery rules, defendant fails to show the code article, on its face, violates compulsory process. As a general matter, the regulation of discovery, including the decision whether to impose sanctions, falls to the great discretion of the trial courts. See State v. Bourque, 96-0842, p. 15 (La.7/1/97), 699 So.2d 1, 11, cert. denied sub nom., Bourque v. Louisiana, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998) (court may "enter any appropriate order to remedy a party's violation of a discovery right")(citing State v. Seals, 95-0395, p. 14 (La.11/25/96), 684 So.2d 368, 378, cert. denied sub nom., Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997)).
More importantly, we find the defendant has failed to show La.Code Crim. Proc. art. 905.5.1 G has seriously affected his rights as required for a person to have standing to bring a constitutional challenge. Defendant's challenge to paragraph G is speculative because there has been no action by the trial court that would preclude it from either conducting a pretrial hearing on the issue of mental retardation or instructing the jury of the prohibition of executing the mentally retarded. Indeed, paragraph G provides that the trial court shall exercise this preclusion upon motion by the district attorney, and there is no such motion by the district attorney in this record. There can be no determination of whether the defendant failed to comply with any order or fully cooperate in any examination by state experts as this case has not even proceeded to that point. In order to have standing to challenge the constitutionality of a legal provision, the person bringing the challenge must have rights in controversy. State v. Mercadel, 03-3015, p. 8 (La.5/25/04), 874 So.2d 829, 834; Ring v. State DOTD, 02-1367, p. 7 (La.1/14/03), 835 So.2d 423, 428. More specifically, a person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights. Mercadel, 03-3015 at p. 8, 874 So.2d at 834; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm'n., 94-2015, p. 5 (La.11/30/94), 646 So.2d 885, 888. Considering that our jurisprudence counsels the practice of courts is never to anticipate a question of constitutional law in advance of the necessity of deciding it, we find because defendant cannot show where his rights have been seriously affected by La. Code Crim. Proc. art. 905.5.1 G, this issue is not ripe for adjudication. Ring, 02-1367 at p. 4, 835 So.2d at 426; Communist Party of United States v. Subversive Activities Control Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

Due Process and Fifth Amendment
Finally, the trial court concluded paragraph E of article 905.5.1 violated the defendant's due process rights because it requires a defendant to condition the exercise of his Eighth Amendment right not to be executed if mentally retarded upon the sacrifice of his Fifth Amendment right against self-incrimination. The trial court found the "broad language in the statute requiring a defendant to `waive all confidentiality and privilege' regarding `relevant' materials presumably includes a defendant's Fifth Amendment privilege outside the scope of the rebuttal inquiry as well as privileged communications with his attorney and his attorney's work product." Record, vol. 6, p. 1392. In Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), the Supreme Court found it intolerable that one constitutional right should have to be surrendered in order to assert *102 another and held when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt, effectively waiving his Fifth Amendment privilege against self-incrimination, unless he makes no objection. The trial court found paragraph E of the code article conflicts with the spirit of the constitutional rule set out in Simmons.
We find here, too, the trial court erred in its analysis by reading the statute broadly to interpret it as requiring a defendant to reveal privileged communications with his attorney as well as requiring him to waive his Fifth Amendment privilege against self-incrimination. Where a capital defendant files a notice claiming mental retardation, Paragraph E enumerates the items to which he waives all claims of confidentiality or privilege. This includes "any and all medical, correctional, educational, and military records, raw data, tests, test scores, notes, behavioral observations, reports, evaluations, expert opinions, and any other such information of any kind or other records relevant or necessary to an examination or determination under this Article." A plain reading of the article clearly reveals the "other information or records" refers to items comparable to those enumerated that are relevant for determination or examination of mental retardation. In testing the constitutionality of a criminal statute, the statute must be "given genuine construction, according to the fair import of [it's] words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.Rev.Stat. 1:3; State v. Newton, 328 So.2d 110, 117 (La.1975). The law requires a fair and genuine construction of legislative acts, a reasonable construction in light of the purpose of the act. Louisiana Health Serv. & Indem. Co. v. Tarver, 93-2449, p. 6 (La.4/11/94), 635 So.2d 1090, 1094. To ascertain the true meaning of a word, phrase or section of a statute, the act as a whole must be considered. Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610, 613 (La.1990). The purpose of La.Code Crim. Proc. art. 905.5.1 is to provide a procedure for the determination of whether a capital defendant is mentally retarded so as to comply with the Eighth Amendment. The article includes procedures to allow the State to independently investigate a defendant's claim of mental retardation in order for the State to rebut evidence or testimony the defendant presents on the factual issue of mental retardation.
The requirement as set out in paragraph E is comparable to the waiver of doctor-patient privilege by a defendant pleading not guilty by reason of insanity. We addressed the issue of whether the State violated the doctor-patient privilege when it presented testimony of a court-appointed psychiatrist, who had referred to the defendant's medical records without the defendant's consent, and also presented the testimony of a parish prison psychiatrist that defendant urged could not be considered because he had not consented. State v. Berry, 324 So.2d 822 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). In finding both of these instances were included within the implied waiver of the privilege resulting from tendering the plea of insanity, we stated:
Under such circumstances, his tender of the issue of insanity waived his right to claim the doctor-patient privilege and not only as to the medical reports he voluntarily furnished the examining physicians, and as to the psychiatrist who testified on his behalf.

*103 By tendering his mental condition to the jury, he waived his right to claim the privilege as to other psychiatric medical evidence relevant to determination of the issue, such as (in this instance) prior medical examination and diagnosis as to the mental condition he now claims exonerates him from criminal responsibility. By claiming the benefits of his plea of insanity, he cannot offer that from the past or present which is favorable to his contention, but at the same time withhold from the jury's consideration (if the state offers it) that which is unfavorable to his plea. Cf. State v. Genna, 163 La. 701, 715, 112 So. 655 (1972)(syllabus 14).
Of course, such an implied waiver should not be deemed to include testimony as to information obtained by physicians as a result of prior examinations which is irrelevant to the present proceeding or in which the prejudicial effect on the merits outweighs its probative value to the narrow issue of insanity so tendered. In short, the implied waiver we judicially recognize is to be narrowly construed in accordance with its limited purpose.
Berry, 324 So.2d at 827-828.
When a capital defendant claims to be mentally retarded, he, too, cannot offer from the past or present that which is favorable to his contention while simultaneously withholding information which is unfavorable to his claim. In making a determination of whether information or records are necessary to a determination pursuant to La.Code Crim. Proc. art. 905.5.1 E, the trial court should keep in mind the relevancy of the information or records sought and La.Code Evid. art. 403. (Relevant evidence may be excluded if its probative value is outweighed by its prejudicial impact, confusion of issues or misleading to the jury).
Paragraph E only mandates the disclosure of materials "relevant or necessary to an examination or determination" of the defendant's mental retardation. A fair reading of the article generally suggests it does not require a defendant to disclose any information subject to the attorney-client privilege or that may be admitted at trial on the issue of guilt. The trial court's finding that paragraph E could possibly cause a conflict with the defendant's Fifth Amendment rights is wholly speculative.

CONCLUSION
For the foregoing reasons, we find the trial court erred in declaring La.Code Crim. Proc. art. 905.5.1 unconstitutional. Although in our view, the interests of judicial economy would be better served by the trial judge making a pretrial determination of whether the capital defendant is mentally retarded, as that procedure would be more efficient and less costly thus saving the State the unnecessary expense of a capital trial where the mentally retarded defendant is exempt from the death penalty, we cannot say the Legislature's choice of permitting this issue to be submitted to the jury offends constitutional guarantees. Furthermore, the trial court's finding that criminal code article 905.5.1 is unconstitutionally vague, denies the defendant compulsory process and requires the defendant to relinquish Fifth Amendment rights is speculative and hypothetical. The defendant has not shown La.Code Crim. Proc. art. 905.5.1 to be facially unconstitutional.

DECREE
The judgment of the trial court is reversed, and the matter remanded for proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
*104 CALOGERO, C.J., and VICTORY and WEIMER, JJ., concur and assign reasons.
JOHNSON, J., dissents and will assign reasons.
CALOGERO, Chief Justice, concurring and assigning reasons.
I concur in the majority's conclusion that the district court erred in finding that La.Code Crim. Proc. art. 905.5.1 is unconstitutional because it allows a jury to determine whether a capital defendant is mentally retarded. I agree that our decisions in State v. Williams, 01-1650 (La.11/1/02), 831 So.2d 835, and State v. Dunn, 01-1635 (La.11/1/02), 831 So.2d 862, do not compel a finding that the legislature's procedure established by 2003 La. Acts 698 offends constitutional due process and Eighth Amendment guarantees because it does not mandate in all capital cases a pre-trial determination by the judge on the issue of mental retardation.[1]
I also agree with the majority's conclusions that the district court erred in declaring: (1) that La.Code Crim. Proc. art. 905.5.1(G) is unconstitutionally vague because it fails to define "fully cooperate" in the section outlining the sanctions for a defendant's failure to meet his obligations to the state in discovery; (2) that Paragraph G is unconstitutional because the sanctions for failure to comply with the discovery requirements prohibit the court from determining mental retardation in a pre-trial hearing and from instructing the jury on the prohibition against executing mentally retarded persons; and (3) that La.Code Crim. Proc. art. 905.5.1(E) violates the defendant's due process rights because it requires a defendant to condition the exercise of his Eighth Amendment right not to be executed if he is deemed mentally retarded upon the sacrifice of his Fifth Amendment right against self-incrimination. As the majority finds, these claims are premature or speculative with regard to this defendant at the present time; consequently, any further discussion by the majority of the merits, or the lack thereof, of these claims is also premature.
Finally, I concur in the majority's opinion today with the understanding that the defendant's remaining claim, that La.Code Crim. Proc. art. 905.5.1 is unconstitutional because the definition of "mental retardation" in Paragraph H is impermissibly vague, has yet to be answered because the majority opinion pretermits any discussion thereof, even though it acknowledges the defendant presented this claim to the district court. See Ante, p. 92, n. 2. While I differ with the majority's apparent view that it may, on direct appeal from the trial court, pretermit considering the merits of the claim on the basis stated, the majority has clearly left that issue for the defendant to raise another day. With that appreciation of the majority decision, I respectfully concur.
VICTORY, J., concurring.
I concur, but write separately to express my disagreement with the majority's statement that, although the legislature's choice of permitting the issue of mental retardation to be decided by the jury is not unconstitutional, "in our view, the interests of judicial economy would be better served *105 by the trial judge making a pretrial determination of whether the capital defendant is mentally retarded . . ." At 103. That is not my view. As I stated in my concurrence in State v. Williams, "[u]nder our law, culpability issues, including insanity at the time of the offense, are decided by a jury, not the trial judge. I believe the same should be true for mental retardation." 01-1650 (La.11/1/02), 831 So.2d 835, 861 (Victory, J., concurring).
For the above reasons, I respectfully concur.
WEIMER, J., additionally concurring.
I write separately to note that in State v. Williams, 01-1650 (La.11/1/02), 831 So.2d 835, and State v. Dunn, 01-1635 (La.11/1/02), 831 So.2d 862, this court was required to provide a procedure where none existed and cobbled together various analogous statutory provisions to provide a workable interim solution. The procedures in Williams and Dunn were designed to fill the void during the period between the decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2241, 153 L.Ed.2d 335 (2002), and a legislative response. The court suggested that its guidelines should be seen as temporary, to be implemented "[i]n the interim between this opinion and legislative action on the subject." Williams, 01-1650 at 29, 831 So.2d at 858. Accordingly, the trial court's suggestion that this court's pronouncement in Williams is somehow controlling is misplaced. Rather, Williams actually invited being superceded by the legislature, which acquiesced by its enactment of LSA-C.Cr.P. art. 905.5.1.
JOHNSON, Justice, dissenting and assigning reasons.
In my opinion, the Constitution and prior jurisprudence require the trial court and not the jury, to make a determination of mental retardation. Mental Retardation is a not a factual determination in Death Penalty cases, which can be made at any stage of the proceedings by a jury, rather the question of the defendant's competency to stand trial, and whether mental retardation precludes imposition of the Death Penalty are questions of law, which must be determined by the court, preferably pretrial. I would affirm the declaration of unconstitutionality as to LSA-C.Cr.P. art. 905.5.1
The Federal Death Penalty Act provides that "[a] sentence of death shall not be carried out upon a person who is mentally retarded." 18 U.S.C. § 3596(c). the statute provides no guidance on how it should be implemented. In United States v. Webster, 162 F.3d 308 (5th Cir.1998), the Fifth Circuit Court of Appeal rejected the defendant's argument that due process required that a jury make the factual determination under 18 U.S.C. § 3596(c) as to whether the defendant was mentally retarded and therefore death ineligible. 162 F.3d 308, 352 (5th Cir.1998). However, this decision (Webster I) predated the Supreme Court's holdings in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that a jury, rather than a judge, must find beyond a reasonable doubt any fact that exposes a criminal defendant to a penalty greater than the statutory maximum, and in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that capital murder defendants are entitled to a jury determination of any fact that increases their maximum punishments. In essence, Apprendi and Ring dictate that any fact which operates as "`the functional equivalent of an element of a greater offense'" must be found by a jury. Ring, 536 U.S. at 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435).
*106 The United States Supreme Court in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), provided no implementation guidelines, but rather "left to the States the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences," when it held that the execution of mentally retarded persons violates the prohibition against cruel and unusual punishment contained in the 8th Amendment. Id. at 317, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (citations omitted).
In Atkins, the United States Supreme Court determined that imposition of the death penalty on mentally retarded inmates constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The Atkins decision did not define who is or is not mentally retarded for purposes of eligibility for a death sentence but instead "leave[s] to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." 122 S.Ct at 2250.
Atkins established mental retardation as an exemption from capital punishment, not a fact whose absence results in an enhancement. Moreover, most state legislatures have also concluded that resolution of the issue by the court is appropriate. For instance, 17 of the 18 states which had procedures in place to address mental retardation prior to Atkins either require or authorize the trial court to determine mental retardation.[1] Of the eight states which have enacted legislation specifying procedures for determining mental retardation in response to Atkins, all but one authorize or require the issue to be committed to the trial court.[2] Accordingly, in conformity with Fifth Circuit precedent and other persuasive authorities, I believe the Court is the appropriate fact-finder on the question of the defendant's possible mental retardation, not the jury.
In Foster v. State, 848 So.2d 172 (Miss. 2003), it was alleged that Ron Chris Foster had an IQ score of 80. The court concluded that IQ alone was not determinative under Atkins. Foster had the following scores on the Wechsler test in December 2002, just before his scheduled execution: verbal IQ of 68, performance score of 59 and a full scale score is 62. He further produced evidence to the effect that he had always been in special or remedial classes. Dr. Marc Zimmerman, who administered the tests, stated that the results were "consistent with a diagnosis of mental retardation." Foster, supra. The Defendant was granted leave to proceed in the trial court on the issue of mental retardation and provided the following standards:
To that end the standard or definition of mental retardation shall be that enunciated by the Supreme Court in Atkins, especially the American Psychiatric Association's definition of mental retardation. *107 American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders IV 39-46 (4th ed.1994).
The Mississippi Supreme Court further held that the Minnesota Multiphasic Personality Inventory-II (MMPI-II) was to be administered since its associated validity scales make the test best suited to detect malingering. See id. at 683 (defining malingering as the "intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs"). See also United States v. Battle, 235 F.Supp.2d 1301, 1307 (N.D.Ga.2001) (explaining MMPI and its validity scales and stating that "[t]he MMPI is generally agreed to be difficult to cheat on without getting caught"). Foster was required to prove that he meets the applicable standard by a preponderance of the evidence pursuant to Miss.Code Ann. § 99-39-23(7). This issue was to be considered and decided by the circuit court without a jury. Foster, 848 So.2d at 175.
Mental retardation is defined by the American Psychiatric Association as significantly sub-average general intellectual functioning accompanied by significant limitations in adaptive functioning in two skill areas, such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety.[3] The onset of this must occur before age 18. The American Psychiatric Association also provides that mild mental retardation is typically used to describe someone in the IQ range of approximately 50 to 70.[4]
In Carr v. State, 873 So.2d 991 (Miss. 2004), the Mississippi Supreme Court remanded the case to the trial court for an evidentiary hearing to determine whether Carr was still eligible for the death penalty. Carr scored in the mildly mentally retarded range on the WAIS-R (Performance IQ=63; Verbal IQ=72; Full Scale IQ=70). Also, the Mississippi Supreme Court in Chase v. State, 873 So.2d 1013 (Miss.2004), granted Chase's application to proceed in the trial court on the issue of his alleged mental retardation. In doing so, the Court held:
[N]o defendant may be adjudged mentally retarded for purposes of the Eighth Amendment, unless such defendant produces, at a minimum, an expert who expresses an opinion, to a reasonable degree of certainty, that: 1. The defendant is mentally retarded, as that term is defined by the American Association on Mental Retardation and/or The American Psychiatric Association;2. The defendant has completed the Minnesota Multiphasic Personality Inventory-II (MMPI-II) and/or other similar tests, and the defendant is not malingering. Chase, 873 So.2d at 1028 (emphasis added).
Chase scored a Performance IQ of 64, a Verbal IQ of 77 and a Full Scale IQ of 71. Chase also submitted an affidavit from a psychiatrist stating that he suffers from mild mental retardation. These Mississippi cases illustrate the need for the court not a jury to determine whether a defendant is mentally retarded or not.
In State v. Williams, 831 So.2d 835, 860 (La.2002), this Court set forth guidelines for an evidentiary hearing to determine *108 mental retardation. This decision was rendered as the interim response to the Supreme Court's Atkins decision and before the Louisiana Legislature's enactment of LSA-C.Cr. P. Art. 905.5.1 in accordance with Atkins. Williams was remanded to the trial court for a full evidentiary hearing to determine whether or not the defendant was mentally retarded. The Court noted the following:
For determining when an evidentiary hearing is necessary to decide whether a defendant faced with a capital sentence is mentally retarded, the courts can use the standard provided by statute for determining when a pre-trial competency hearing is necessary. See LSA-C.Cr.P. art. 643 ("The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed."). See also, LSA-C.Cr.P. art. 643, Official Revision Cmt. (a) ("It is not enough that the defense has filed a motion urging the defense [of mental incapacity to proceed], but there must be sufficient evidence to raise a reasonable doubt as to such capacity.") Of course, the "reasonable doubt" mentioned in the Comment is not a reference to proof beyond a reasonable doubt in the guilt phase of the trial. Instead, Article 643 establishes a standard that a defendant must meet by coming forward with some evidence to put his mental condition at issue. For a discussion of LSA-C.Cr. P.art. 641 et seq. and the jurisprudence that applies these procedures, see State ex rel. Seals v. State, 00-2738 (La.10/25/02), 831 So.2d 828.
In Williams the Court gave the following instructions to the trial courts:
As to the procedures to be used for post-Atkins hearings, we instruct the trial courts as follows: 1) to order a pre-trial evidentiary hearing on the issue of mental retardation when the court has "reasonable ground" to believe a defendant is mentally retarded, LSA-C.Cr.P. art. 643; 2) to hold the hearing before a judge, not a jury; and 3) to require the defendant to prove by a preponderance of the evidence that he meets the criteria established in Louisiana's statutory definition of mental retardation, LSA-28:381. (Emphasis added)
In the case sub judice, Turner raised the issue of his mental retardation in a pre-trial hearing where he presented the testimony of two Psychologists, Dr. Victoria Swanson and Dr. Randy Logan, who testified in the pretrial hearing that due to Turner's limited intellectual functioning attributable to his mental retardation, he was incapable of making a knowing and intelligent waiver of his Miranda rights prior to his interrogation by investigating officers.
NOTES
[1] See Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)(Eighth Amendment prohibits execution of mentally retarded criminal); La.Code Crim. Proc. art. 905.5.1 A (no person who is mentally retarded shall be subjected to a sentence of death).
[2] In addition, defendant argued below that the definition of mental retardation in La. Code Crim. Proc. art. 905.5.1 is unconstitutionally vague, and re-urges that argument in his brief to this Court. We pretermit discussion of this argument, which the trial court implicitly rejected.
[3] Dunn was decided on the same day as Williams. In Dunn we affirmed the defendant's conviction and remanded the matter for a hearing to determine whether defendant was mentally retarded such that he is exempt from the death penalty, in accordance with the procedures we adopted in Williams.
[4] The three special issues were:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.
Penry, 492 U.S. at 310, 109 S.Ct. at 2942 (citing Tex.Code Crim. Proc. Ann. arts. 37.071(b) (Vernon 1981 and Supp.1989)).
[1] Though not acknowledged by the majority, the code article itself appoints the state, rather than the district court, as the final arbiter on whether the matter will be heard pre-trial by the judge or be decided at the sentencing hearing by the jury, if the defendant moves for a pre-trial determination by the judge. See La.Code Crim. Proc. art. 905.5.1(C)(1) ("The jury shall try the issue of mental retardation of a capital defendant during the capital sentencing hearing unless the state and the defendant agree that the issue is to be tried by the judge.").
[1] See Ariz.Rev.Stat. Ann. § 13-703.02; Colo. Rev.Stat. Ann. §§ 18-1.3-1102; Ind.Code Ann. §§ 35-36-9-5; Ky.Rev.Stat. Ann. §§ 532.135; S.D. Codified Laws §§ 23A-27A; Tenn.Code Ann. § 39-13-203; Ark.Code Ann. § 5-4-618; Mo. Ann. Stat. § 565.030; N.C. Gen.Stat. § 15A-2005; N.Y.Crim. Proc. Law § 400.27; Kan. Stat. Ann. § 21-4623; Neb. Rev.Stat. § 28-105.01; N.M. Stat. Ann. § 31-20A-2.1; Conn. Gen.Stat. § 53a-46a (on motion of defendant with consent of state); Md. Code Ann., Crim. Law §§ 2-202,-303; Fla. Stat. Ann. § 921.137; Wash. Rev.Code Ann. § 10.95.030.
[2] See, e.g., Idaho Code § 19-2515A; Utah Code Ann. §§ 77-15a-101 to -106, 77-18a-1; Nev.Rev.Stat. 174, 175.554, 177.015, 177.055, 200.030; La.Code Crim. Proc. Ann. art. 905.5.1 (by consent of the parties); Del.Code Ann. tit. 11, § 4209; Ill. Comp. Stat 5/114-115; Cal.Penal Code § 1376 (upon defendant's request).
[3] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000).
[4] Id. at 42-43.