268 So.2d 335 (1972)
Fred PETERSON
v.
STATE of Mississippi.
No. 46821.
Supreme Court of Mississippi.
June 19, 1972.
On Rehearing November 6, 1972.
Harold J. DeMetz, Ebb J. DeMetz, Gulfport, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
GILLESPIE, Chief Justice:
This is the second appeal of Fred Peterson, who was first convicted of murder in the Circuit Court of Stone County and sentenced *336 to suffer the death penalty. His conviction was reversed by this Court on the ground of improper venue. Peterson v. State, 242 So.2d 420 (Miss. 1970). Thereafter, he was tried in the Second Judicial District of Harrison County and was again convicted of murder and sentenced to suffer the death penalty. At both trials and on both appeals the defendant has had the services of the same court-appointed counsel, who has capably served his client with selfless devotion in the best tradition of the profession.

I.
Defendant contends first that the process of selecting grand and petit jurors deprived him of due process and equal protection of the law. Mississippi Code Annotated section 1766 (1956) provides in part that the board of supervisors "shall use the registration book of voters and shall select and list the names of qualified persons of good intelligence, sound judgment, and fair character... ." Defendant argues that this statute permits the board of supervisors to use purely subjective tests and that jurors need only meet the personal requirements of the individual members of the board of supervisors. Defendant further argues that inasmuch as he is of low intelligence, poor character, and unsound judgment, the method of listing and selecting jurors deprived him from being tried by a jury of his peers, and for this reason defendant's life was placed in the hands of individual jurors who probably could not appreciate the facts and circumstances of his life, background, education, character and judgment.
Defendant's arguments are without merit. All provisions of law relating to testing, drawing, summoning and impaneling jurors are merely directory. Holloway v. State, 242 So.2d 454 (Miss. 1970). There was no showing in the trial court that the jurors were unconstitutionally listed or drawn. Gordon v. State, 160 So.2d 73 (Miss. 1964). Moreover, due process and equal protection of the law do not require lowering the quality of the trial process. This Court has rejected the contention that the statutory method of selecting jurors is unconstitutionally vague because of alleged subjective and nonreviewable standards. Reed v. State, 199 So.2d 803 (Miss. 1967), cert. denied 390 U.S. 413, 88 S.Ct. 1113, 19 L.E.2d 1273 (1968). The test is whether the jury lists reasonably reflect a cross-section of the population suitable in character and intelligence for that civic duty. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). The jury in this case was lawfully drawn, listed, and impaneled. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

II.
The principal argument of defendant is that imposition of the death penalty constitutes "cruel and unusual punishment" under the Eighth Amendment of the Constitution of the United States, and "cruel or unusual punishment" under Mississippi Constitution Article 3 section 28. This Court recently considered this question in Capler v. State, 237 So.2d 445 (Miss. 1970), and held that imposition of the death penalty is neither cruel nor unusual punishment, and upheld the statutes imposing capital punishment. In the earlier case of Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944), the death penalty and the arguments for and against it were considered and the methods of determining such punishment upheld.
The defendant relies upon the argument, authorities and supporting data submitted to the Supreme Court of California in People v. Anderson, 6 Cal.3d 628, 100 Cal. Rptr. 152, 493 P.2d 880 (Cal. 1972), and upon the opinion in that case. The Anderson opinion, which is essentially an excellent symposium on the subject of capital punishment, merits serious consideration, but a careful study of it and some of the source material upon which it is based does not persuade us that its conclusions are valid.
*337 This Court has the power to strike down the statutes allowing capital punishment, and it is indeed our duty to do so if they offend either the Constitution of the United States or the Constitution of Mississippi. But the extent of the Court's power and the imperative nature of its duty to uphold the Constitutions do not dispose of the question before us.
Our approach to the question of whether capital punishment is cruel or unusual, and therefore constitutionally impermissible, brings into focus the policy of this Court in determining constitutional questions. We believe the proper function of this Court is to maintain a balance between a rigid unwillingness to change on the one hand, and an obsession with novelty in the pursuit of unproven methods on the other. This middle course is not only conducive to reasonable stability in the law, but to repose in society in general. This Court is committed to the proposition that because judges define their own powers, self-restraint is a cardinal virtue. In scores of cases we have held that all presumptions and intendments should be indulged in favor of the validity of a statute, and its unconstitutionality should appear beyond a reasonable doubt before it will be held invalid.
It is argued that capital punishment offends contemporary standards of decency common to civilized peoples. This assertion is not to be lightly brushed aside even if it is a most ambiguous statement. It is true that some countries and some states in the United States have abolished capital punishment. However, except in Anderson these changes have been accomplished by state legislatures.
This is the most violent century in modern history, and this great nation is one of the most violent countries in the world.[1] Personal violence has increased to the degree that experts in the field of human behavior have doubts whether the structure of society can survive. Crime is a significant factor in the average person's life. "The existence of crime, the talk about crime, the reports of crime, and the fear of crime have eroded the basic quality of life for many Americans."[2] No one would contend that capital punishment is the answer to the crime problem, but there is a serious question whether this is an appropriate time for the courts to experiment by abolishing a form of punishment that has the sanction of history. We cannot say that the statutes authorizing capital punishment are cruel in the constitutional sense.
It is also argued that the death penalty is unusual punishment and therefore its infliction is unconstitutional. In support of this part of the argument it is stated that nine states have abolished capital punishment and six others have limited its application to exceptional circumstances. In the United States the number of executions has steadily declined since 1935, with no executions since 1967. Forty-six countries have abolished the death penalty. All this, it is urged, indicates a clear trend toward total abolition and shows the increasingly unusual nature of capital punishment.
Jurors are now less inclined to impose the death penalty than in years past. Some legislatures are responding to the people's will by either abolishing the death penalty or limiting its application to exceptional circumstances. These are the proper processes for dealing with the death penalty question. When a state legislature abolishes capital punishment, it is a valid expression of the people's will that capital punishment offends their sensibilities. *338 Punishment is essentially a legislative question.
The meaning of the term "unusual" is not easily defined. In our opinion the fact that the death penalty is carried out infrequently does not mean that it is unusual within the meaning of the Constitutions.
The personal views of the several Judges of this Court on the question of the death penalty in general, or on its application in a particular case, should not affect its constitutionality. Along with every thoughtful person we stand in awe before the judgment of death, painfully aware of human frailty, including our own, and the finality of death. But we are aware that difficult decisions must be made. Punishment has been a part of the history of the human race, and we cannot say at this particular moment in time that the shadow of the death penalty does not deter, or that it does not have a proper and constitutional part in dealing with the age-old and everincreasing problem of crime.
Affirmed and July 27, 1972, is set as the date for the execution of the sentence.
All Justices concur.

On Petition for Rehearing
The foregoing opinion was filed prior to the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), but publication was held up pending disposition of the petition for rehearing. In the meantime the decision in Furman v. Georgia was handed down. The statutes of Mississippi and Georgia are substantially similar and therefore this Court is bound under Furman to sustain the petition for rehearing in part. Therefore, the judgment of the Circuit Court of Harrison County is reversed insofar as it imposed the death penalty, and the case is remanded for the sole purpose of resentencing the defendant. In Capler v. State, Miss., 268 So.2d 338, decided this date, this Court held that since the death penalty cannot be constitutionally imposed under Mississippi Code 1942 Annotated section 2217 (1956), the only other punishment in a murder case is life imprisonment.
Petition for rehearing sustained in part, death penalty sentence set aside; and remanded for resentencing.
All Justices concur.
NOTES
[1] Mississippi is fortunate in that it had the lowest crime rate in the nation in 1969, and the second lowest in 1970. Crime in the United States, Uniform Crime Reports  1970 at p. 68 (Release of August 31, 1971).
[2] President's Commission on Law Enforcement and Administration of Justice, "The Challenge of Crime in a Free Society," at p. v (Report 1967).