## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00389-SCT

*FREDERICK BELL*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | GLENN S. SWARTZFAGER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ELLIOTT GEORGE FLAGGS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | VACATED AND REMANDED - 01/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### COLEMAN, JUSTICE, FOR THE COURT:

¶1.     A jury convicted Frederick Bell of capital murder and sentenced him to death in 1993. He has since been declared mentally retarded and, therefore, his death sentence is unconstitutional under ***Atkins v. Virginia***, 536 U.S. 304 (2002). The circuit court resentenced Bell to life without parole pursuant to Mississippi Code Section 99-19-107. Bell appeals, asserting that Section 99-19-107 does not apply to his case. We agree, and we vacate Bell's sentence and remand for resentencing.

### Factual Background and Procedural History

¶2.    Frederick Bell was convicted of capital murder in 1993. *Bell v. State*, 725 So. 2d 836, 840-41 (¶¶ 1-2) (Miss. 1998). At the time, Mississippi Code Section 97-3-21 provided two sentences for capital murder – death or life imprisonment.[1] The jury imposed the death penalty. *Bell*, 725 So. 2d at 841 (¶ 3). Bell's conviction and death sentence were affirmed on direct appeal. *Id.* at 868 (¶ 117). In a successive petition for post-conviction relief, Bell requested a hearing on his allegation that he was mentally retarded. The Court recognized that Bell was entitled to a hearing under *Atkins v. Virginia*, 536 U.S. 304 (2002), which prohibited execution of the mentally retarded, and granted Bell's petition on that issue only. *Bell v. State*, 66 So. 3d 90, 91 (¶ 1) (Miss. 2011). Doctors at the Mississippi State Hospital evaluated Bell and determined that he was mentally retarded within the meaning of *Atkins*. The State filed a motion for resentencing in circuit court and, over Bell's objection, the circuit court resentenced Bell to life without parole pursuant to Mississippi Code Section 99-19-107 and *Foster v. State*, 961 So. 2d 670 (Miss. 2007). Bell appeals.

**Analysis**

¶3.    Bell claims that his ineligibility for the death penalty entitled him to be resentenced to life imprisonment with the possibility of parole because: (1) *Atkins v. Virginia* was not a wholesale declaration that the death penalty was unconstitutional, so Section 99-19-107 does not apply to his case; and (2) his due process rights were violated because the life without parole sentence was a retroactive imposition of changes by judicial interpretation of a criminal statute that were unexpected and indefensible. We review questions of law *de*

---

[1] The option of life without parole was added in 1994. *See Twillie v. State*, 892 So. 2d 187, 189 (¶ 7) (Miss. 2004) (citing Miss. Code Ann. § 97-3-21 (Rev. 2000)).

2

*novo*.  ***Jones v. State***, 122 So. 3d 698, 700 (¶ 4) (Miss. 2013); ***Goodin v. State***, 102 So. 3d 1102, 1111 (¶ 30) (Miss. 2012).  The first issue is dispositive, so we will not address Bell's due process claim.

> **Whether Mississippi Code Section 99-19-107, requiring a sentence of life imprisonment without parole in the event the death penalty is held unconstitutional, applies to Bell's case.**

¶4.     Bell argues that the trial court erred by resentencing to him to life without parole under Mississippi Code Section 99-19-107, which provides:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life, and such person shall not be eligible for parole.

Miss. Code Ann. § 99-19-107 (Rev. 2007).  Bell contends that Section 99-19-107 applies only if there has been a "wholesale declaration that the death penalty . . . is unconstitutional." *See* ***Abram v. State***, 606 So. 2d 1015, 1039 (Miss. 1992).  Because ***Atkins*** was not a wholesale declaration that the death penalty was unconstitutional, Bell maintains that Section 99-19-107 does not apply.

¶5.     The State responds that the trial court's imposition of a life without parole sentence was proper under ***Foster v. State***, in which the Court overruled ***Abram v. State*** and held that Section 99-19-107 provided "an alternative sentence for a *person* whose death sentence has been deemed unconstitutional."  ***Foster***, 961 So. 2d at 672 (¶ 8) (emphasis added).  As evidenced by the Court's own difficulty in settling on its meaning, further discussed below, we conclude that Section 99-19-107 is ambiguous.  Also, due in part to the Court's

indecisiveness regarding the meaning of Section 99-19-107, we hold that the doctrine of *stare decisis* does not apply to the Court's holding in **Foster**.

### A. Historical Background of Section 99-19-107

¶6.     The Legislature enacted Section 99-19-107 in 1977 in the wake of several United States Supreme Court opinions pertaining to the constitutionality of the death penalty as applied in particular circumstances.  A brief review of that jurisprudence provides helpful context for today's analysis.

¶7.     In 1972, the United States Supreme Court struck down Georgia's death penalty statute as violative of the Eighth Amendment because of the arbitrary and capricious way in which it was administered.  *Furman v. Georgia*, 408 U.S. 238 (1972).  After *Furman*, the death penalty stood abolished in many states, including Mississippi.  *See Peterson v. State*, 268 So. 2d 335 (Miss. 1972).  In response, the Mississippi Legislature amended the state's death penalty law to mandate the death penalty for certain crimes, including capital murder.  *See* Miss. Code Ann. § 97-3-21 (1975).  Then, in 1976, the United States Supreme Court invalidated mandatory death statutes.  *Woodson v. North Carolina*, 428 U.S. 280 (1976).  The same day *Woodson* handed down, the Supreme Court also decided *Gregg v. Georgia*, 428 U.S. 153 (1976), *Proffitt v. Florida*, 428 U.S. 242 (1976), *Jurek v. Texas*, 428 U.S. 262 (1976), and *Roberts v. Louisiana*, 428 U.S. 325 (1976), which explained that *Furman* did not abolish the death penalty or hold it unconstitutional, but sought to guard against arbitrariness and capriciousness in the imposition of the death penalty.  *See Gregg*, 428 U.S. at 188-89.

¶8. In the wake of the above-described cases, the Mississippi Supreme Court decided *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), in which the appellant had challenged the constitutionality of Mississippi Code Section 97-3-21. The *Jackson* Court held that the intent of the Legislature was to enact a death penalty statute that would satisfy *Furman*'s constitutional requirements. *Jackson*, 337 So. 2d at 1251. The *Jackson* Court construed Section 97-3-21 to mean that individuals convicted of capital murder would be sentenced to death only if the jury imposed a death sentence "after the defendant has been accorded a trial governed by procedures and guidelines designed to prevent the risk that the death penalty would be inflicted in an arbitrary and capricious or freakish manner." *Id.* The Court held that Mississippi's death penalty was permissive, rather than mandatory, and that the alternative to the death penalty was life imprisonment. *Id.* at 1251, 1256.

¶9. In 1977, the Mississippi Legislature again amended Section 97-3-21 to provide for a sentence of either death or life imprisonment as the penalty for capital murder, consistent with *Jackson*'s constitutional reading of that section. *See* Miss. Code Ann. § 97-3-21 (1977). The Legislature also enacted Section 99-19-107, which provided:

> In the event the death penalty is held to be unconstitutional by the Mississippi Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death shall cause such person to be brought before the court and the court shall sentence such person to imprisonment for life, and such person shall not be eligible for work release or parole.

Miss. Code Ann. § 99-19-107 (1977).[2]

---

[2] The words "work release or" were removed in the 1982 version. *See* Miss. Code Ann. § 99-19-107 (1982).

**B. Interpretation and Application of Section 99-19-107**

¶10.    The Court first considered Section 99-19-107 in ***Abram v. State***, 606 So. 2d 1015

(Miss. 1992).  Abram was convicted of capital murder and sentenced to death by a jury in

1984.  ***Id.*** at 1018.  Afterward, Abram moved for a new trial or judgment notwithstanding

the verdict.  ***Id.***   The trial court granted the motion, finding Abram's death sentence

unconstitutional under ***Enmund v. Florida***, 458 U.S. 782 (1982).[3]  The trial court stayed the

jury's death sentence indefinitely and sentenced Abram to life without parole pursuant to

Section 99-19-107.  ***Abram***, 606 So. 2d at 1038.  On appeal, the Court held that the trial court

had misapplied the ***Enmund*** factors and, thus, had erred in setting aside Abram's death

sentence.  ***Id.*** at 1039-44.  The ***Abram*** Court also held that the trial court had misapplied

Section 99-19-107, writing:

> Although there are no cases addressing the precise application of § 99-19-107,
> we think it *fairly obvious* that it is reserved for that event when either this
> Court or the United States Supreme Court makes a *wholesale declaration that
> the death penalty in general, and/or our own statutory death penalty scheme
> in particular, is unconstitutional*. This section is not reasonably or logically
> intended for use on a case by case basis by trial courts or this Court in
> conjunction with ***Enmund*** analysis.
>
> The only logical alternative once the jury verdict was disregarded would have
> been to impose a sentence of life imprisonment. . . .

***Id.*** at 1039 (emphasis added).  ***Abram*** remained the law, and Section 99-19-107 was not

mentioned again until 2007.

---

[3] In ***Enmund***, the Supreme Court had held that, in order for the death penalty to be imposed for felony murder, there must be a finding that the defendant in fact killed, attempted to kill, or intended that a killing take place or that lethal force be used. ***Enmund***, 458 U.S. at 797.  The Mississippi Legislature codified the ***Enmund*** factors in 1983. *See* Miss. Code Ann. § 99-19-101(7) (1983).

¶11. In 2007, the Court had a second opportunity to examine Section 99-19-107 in *Foster v. State*, 961 So. 2d 670 (Miss. 2007), and the Court overruled *Abram*. Foster had been convicted for capital murder and sentenced to death for a murder that occurred when he was seventeen years old. *Id.* at 671 (¶ 2). Foster had raised the issue of his diminished mental capacity in a petition for post conviction relief, which had been denied. *See Foster v. State*, 687 So. 2d 1124 (Miss. 1996). However, following the Supreme Court's decision in *Atkins*, former Governor Ronnie Musgrove granted Foster a reprieve from execution and directed the Court to address the constitutionality of Foster's sentence under *Atkins*. *Foster v. State*, 848 So. 2d 172, 173 (¶ 6) (Miss. 2003). Foster argued that his diminished mental capacity made him ineligible for the death penalty pursuant to *Atkins*, and the Court remanded for the trial court to conduct an *Atkins* hearing. *Id.* at 176 (¶ 15).

¶12. While Foster's remand for an *Atkins* hearing was pending, the United States Supreme Court handed down *Roper v. Simmons*, 543 U.S. 551 (2005), which held that the death penalty was unconstitutional as applied to individuals under eighteen years of age at the time of their capital crimes. Thereafter, the Court granted the State's motion to withdraw the mandate for an *Atkins* hearing, vacated Foster's death sentence, and directed the trial court to sentence him to life without parole pursuant to Section 99-19-107. *Foster*, 961 So. 2d at 670 (¶ 1). The circuit court complied, and Foster appealed the judgment, arguing that the application of Section 99-19-107 constituted an *ex post facto* punishment. *Id.* at 671 (¶¶ 3-4). We rejected Foster's claim and found that, at the time Foster committed his crime, he was equally subject to Section 99-19-107. *Id.* at 672 (¶ 7). Regarding the application of Section 99-19-107 and the *Abram* Court's interpretation of it, the *Foster* Court wrote:

7

The *language of the statute is clear*; it intends to provide for an alternative sentence *for a person whose death sentence has been deemed unconstitutional*. This Court has previously addressed the scope of section 99-19-107 in ***Abram v. State***, 606 So. 2d 1015 (Miss. 1992). In ***Abram***, this Court held that the statute was applicable "for that event when either this Court or the United States Supreme Court makes a wholesale declaration that the death penalty in general, and/or our own statutory death penalty scheme in particular, is unconstitutional." ***Abram***, 606 So. 2d at 1039. The "wholesale declaration" requirement set out in ***Abram*** is extraneous language that is unnecessary to the application of the statute. The statute provides that no one whose death penalty is ruled unconstitutional may receive parole. To the extent that ***Abram*** is inconsistent with the plain meaning of section 99-19-107, it is hereby overruled.

***Foster***, 961 So. 2d at 672 (¶ 8) (emphasis added). The ***Foster*** Court showed certainty equal to that of the ***Abram*** Court when it reached an entirely different conclusion and overruled ***Abram***. The ***Foster*** Court overruled ***Abram*** without once mentioning *stare decisis* or questioning whether that doctrine should operate to preserve ***Abram***.

¶13. A unanimous Court issued ***Abram*** in 1992, fifteen years after the Legislature had passed Section 99-19-107; ***Foster*** emerged from a divided Court thirty years after the Legislature had enacted Section 99-19-107.[4] The ***Abram*** Court held it "fairly obvious" that Section 99-19-107 would apply only if the death penalty in general or Mississippi's statutory iteration of the death penalty was to be struck down as unconstitutional. ***Abram***, 606 So. 2d at 1039. The ***Foster*** Court held that Section 99-19-107 was "clear," and that it applies when an individual convict's sentence of death is declared unconstitutional as to that person alone. ***Foster***, 961 So. 2d at 672 (¶ 8).

---

[4] The vote in ***Abram*** was 6-0, with three justices not participating. ***Abram***, 606 So. 2d at 1044 (three justices dissented on another part of the opinion). The vote in ***Foster*** was 5-2, with two justices not participating. ***Foster***, 961 So. 2d at 673.

8

¶14. Only one thing is "clear" from Section 99-19-107 and the interpretation thereof in *Foster* and *Abram* – Section 99-19-107 is ambiguous. More specifically, the scope of the phrase "the death penalty" in that section is undefined and ambiguous. Both the *Abram* and *Foster* interpretations of Section 99-19-107 are reasonable, and a statute capable of two reasonable interpretations is ambiguous. Thus, we turn to statutory construction in an attempt to "discern the legislative intent." *Miss. Methodist Hosp. and Rehab. Ctr., Inc., v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (¶ 18) (Miss. 2009). When addressing how to determine the intent of the Legislature, we have written:

> [W]e first look to the language of the statute and any relevant legislative history. In order to ascertain the legislative intent, this Court "may look not only to the language used but also to [the statute's] historical background, its subject matter, and the purposes and objects to be accomplished." *Davis v. AG*, 935 So. 2d 856, 868 (Miss. 2006) (quoting *Bailey v. Al-Mefty*, 807 So. 2d 1203, 1206 (Miss. 2001)). This Court considers "the purpose and policy which the legislature had in view of enacting the law . . . [and] will then give effect to the intent of the legislature." *State ex rel. Hood v. Madison County ex rel. Madison County Bd. of Supervisors*, 873 So. 2d 85, 88 (Miss. 2004) (citing *Aikerson v. State*, 274 So. 2d 124, 127 (Miss. 1973)).

*Tunica County v. Gray*, 13 So. 3d 826, 830 (¶ 18) (Miss. 2009). *See also Miss. Methodist Hosp.*, 21 So. 3d at 607 (¶ 18) (Court may "look to the statute's historical background, purpose, and objectives.").

¶15. Our review of the bill that included what would be codified as Section 99-19-107 reveals that the *Abram* Court interpreted it correctly. *See* Miss. Laws 1977, ch. 458 (1977). The bill was lengthy and included thorough treatment of numerous, if not all, parts of the Mississippi criminal code by which the death penalty could be imparted. Given the then-existing challenges, not only to the death penalty as applied to certain groups of individuals

9

but to the death penalty as a whole, we conclude it is more likely that Section 99-19-107, enacted in 1977, referred to a wholesale removal of the death penalty as interpreted in *Abram*.

¶16.    To understand the challenges in question, one may start with the 1972 case of ***Furman v. Georgia***, discussed above.  ***Furman*** was a one-paragraph, *per curium* opinion in which the United States Supreme Court reversed death sentences in three separate cases.  ***Furman***, 408 U.S. at 239-40.  The Court wrote merely "The Court holds that the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments."  ***Id.***  In addition to the one-paragraph opinion, however, Justices Douglas, Brennan, Stewart, White, and Marshall each wrote lengthy concurrences, and Chief Justice Burger and Justices Blackmun, Powell, and Rehnquist each authored substantial dissents.  ***Id.*** at 240-470.  We will not fully address each of the nine separate opinions – spanning 230 pages – but, given their content, the opinions raised the then-real possibility of a complete erasure of capital punishment.  In his separate opinion, Justice Stewart established that, indeed, the Court had considered a global prohibition against the death penalty.  He wrote:

> The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.
>
> For these and other reasons, at least two of my Brothers have concluded that the infliction of the death penalty is constitutionally impermissible in all circumstances under the Eight[h] and Fourteenth Amendments. Their case is a strong one. But I find it unnecessary to reach the ultimate question they would decide.

10

*Id.* at 306 (Stewart, J., concurring). Clearly, the wholesale removal of the death penalty from American criminal law was the conspicuous desire of some members of the *Furman* Court.

¶17. Then, in *Woodson v. North Carolina*, the appellant urged the Supreme Court to hold the death penalty unconstitutional under any circumstances. *Woodson*, 428 U.S. at 285. The Supreme Court handed down *Woodson* in 1976, one year before the Mississippi Legislature enacted Section 99-19-107. Again, in *Gregg v. Georgia*, handed down the same day as *Woodson*, the Court considered whether the death penalty was cruel and unusual punishment violating the Eighth and Fourteenth Amendments of the Constitution in all circumstances. *Gregg*, 428 U.S. at 168. The Supreme Court discussed whether the death penalty was a cruel and unusual punishment under any circumstances in at least three other cases decided in 1976. *See Proffitt*, 428 U.S. at 247; *Jurek*, 428 U.S. at 268; *Roberts*, 428 U.S. at 331. Accordingly, 1970's death penalty jurisprudence established an environment in which the Mississippi Legislature faced the possible global removal of capital punishment from our criminal law. In drafting Section 99-19-107 within that context, the Legislature likely intended to address the possibility that "the death penalty" in its entirety would become unconstitutional. Given the statute's history, the comprehensive nature of the bill that spawned it, and the plain language of the statute, we are convinced that the *Abram* Court correctly interpreted Section 99-19-107.

¶18. Returning to the instant case, Bell is correct that the Supreme Court's holding in *Atkins* was not a wholesale declaration that the death penalty was unconstitutional. Rather, *Atkins* prohibited the imposition of death sentences on mentally retarded individuals. Thus, an individual sentenced to death who is later determined to be mentally retarded pursuant to

11

*Atkins* should be resentenced, not automatically given a sentence of life without parole. Instead, after *Foster*, courts have applied Mississippi Code Section 99-19-107 to impose a mandatory sentence of life without parole for anyone whose individual death sentence is deemed unconstitutional. *See Neal v. State*, 27 So. 2d 460 (Miss. Ct. App. 2010).[5] That application of Section 99-19-107 under *Foster* is erroneous. However, the *Foster* decision is our latest pronouncement on the meaning of the statute, and *Foster* expressly overruled *Abram*, so we would be remiss if we failed to address it.

### C. *Foster v. State* and the Doctrine of *Stare Decisis*

¶19.    We have considered it a principle of *stare decisis* that, when we apply a rule of law to one party before the Court, we must apply the same rule of law to all others coming before us. *Miss. Transp. Comm'n v. Ronald Abrams Contractor, Inc.*, 753 So. 2d 1077, 1094 (¶ 56) (Miss. 2000). In other words, "*stare decisis* proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991). In a recent treatment of *stare decisis*, the Court wrote:

> [O]ur precedent applying *stare decisis* may be summed up as follows: Even though this Court's previous interpretation of a statute was (in the current Court's view) erroneous, we must continue to apply the incorrect interpretation

---

[5] The Court of Appeals applied *Foster* in *Neal v. State*, 27 So. 3d 460 (Miss. Ct. App. 2010). Neal's 1982 death sentence was held unconstitutional after he was determined to be mentally retarded pursuant to *Atkins*. *Neal*, 27 So. 3d at 460-62 (¶¶ 1, 7). He subsequently was sentenced to life without parole under Section 99-19-107. *Id.* at 461 (¶ 3). Neal appealed, arguing that it constituted *ex post facto* punishment under both the state and federal constitutions. *Id.* at 461 (¶ 5). The Court of Appeals rejected Neal's claims and affirmed his sentence. *Id.* at 462 (¶ 7). Relying on *Foster*, the Court of Appeals held that Neal was subject to Section 99-19-107 at the time he committed his crime. *Id.*

unless we consider it "pernicious," "impractical," or "mischievous in . . . effect, and resulting in detriment to the public."

Unfortunately, having stated what must be found to prevent application of *stare decisis*, this Court has offered no guidelines for finding or identifying these prerequisites (pernicious, impractical, mischievous, etc.). A justice on this Court might reasonably conclude that some of the definitions of mischievous or pernicious apply to all of this Court's prior opinions with which that justice disagrees.*Caves v. Yarbrough*, 991 So. 2d 142, 152 (¶¶ 38-39) (Miss. 2008) (citations omitted).

¶20.   The *Foster* Court overruled *Abram* without any discussion of whether it considered the *Abram* interpretation of Section 99-19-107 to be pernicious, impractical, or mischievous in its effect.  From the text of the *Foster* opinion, the Court simply disagreed with its predecessor Court.  The Court never has dealt with the statute while acknowledging both its ambiguity and history, and the sparse treatment of the problem in *Abram* and *Foster* weakens the application of *stare decisis* to today's case.  *Stare decisis* applies to "long established legal interpretations."  *Molpus*, 578 So. 2d at 634.  In today's case, we are presented with a situation in which only two opinions interpret a statute, each opinion characterizes its interpretation as clear or obvious, and each opinion reaches a wholly different conclusion. The situation at hand does not make for a "long established legal interpretation."

¶21.   Moreover, *stare decisis* applies less forcefully to our interpretation of remedial, rather than substantive, statutes.

Here, we inquire whether there are citizens of our state who in good faith have relied upon the current rule in their plans and activities? . . . We recognize that if the answers of these questions be in the affirmative, such is a powerful consideration militating against abandonment of the rule existing heretofore.

The content of the law is readily available to the citizenry. It must be so if one is to order his life. . . . The rule of *stare decisis* exists to further private order. It is based upon the desirability of enabling people to plan their affairs at the

> level of primary private activity with the maximum attainable confidence that, if they comply with the law as it has theretofore been announced, or can fairly be expected to be announced thereafter, they will not become entangled in litigation. Those laws that regulate and undergird primary private activity must be constant through time.
>
> But not all rules of law are of this type. Specifically, rules that provide remedies do not serve the same function in ordering our society as to those rules regulating primary private activity, rules occasionally grossly known as "substantive rules of law."

*Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 465 (Miss. 1983) (citations omitted). Section 99-19-107 is akin to a remedial statute. Certainly, the statutes criminalizing conduct and affixing death as a penalty would be primary, substantive laws that order the behavior of our citizens, but Section 99-19-107 only would come into effect well after one had committed the criminal act *and* a court had declared the death penalty to be unconstitutional. Accordingly, the grip of *stare decisis* is further weakened.

¶22. We have cited with approval the concept that the only response to an error in our cases affecting the administration of justice is to fix it. *Brewer v. Browning*, 115 Miss. 358, 76 So. 267, 270 (1917). For the reasons given above, we conclude that *stare decisis* does not prevent the Court from returning to the *Abram* Court's interpretation of Section 99-19-107, which, as discussed, we consider the accurate interpretation.

¶23. Under the Court's interpretation in *Abram*, Section 99-19-107 would come into play only if the death penalty in its entirety is rendered unconstitutional. In that situation, rather than every individual on death row having to undergo resentencing, the courts would impose sentences of life without parole for every person with a death sentence. The death penalty has been rendered unconstitutional to certain classes of people – minors and mentally

14

retarded – but has not been rendered wholesale unconstitutional. Thus, Bell is correct that, under *Abrams*, Section 99-19-107 does not apply. Accordingly, we vacate the trial court's sentence of life without parole and remand the case for Bell to be resentenced to life, because death and life were the only two sentencing options at the time Bell was convicted and sentenced.

## Conclusion

¶24. We hold that Section 99-19-107 is inapplicable because the death penalty in its entirety has not been declared unconstitutional. As to Bell individually, however, his sentence of death is unconstitutional because he has been determined to be mentally retarded. Section 99-19-107 does not apply when an individual's death sentence is rendered unconstitutional. That section would apply if, and only if, the United States Supreme Court or the Mississippi Supreme Court rendered a wholesale declaration that the death penalty as a sentence to anyone was unconstitutional. That has not happened, and Section 99-19-107 has never been called into play. With his death sentence being unconstitutional, Bell is entitled to a new sentence. Bell's sentence is vacated, and we remand the case to the Circuit Court of Grenada County for Bell to be resentenced to life imprisonment.

¶25. **VACATED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KITCHENS, AND KING, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., AND CHANDLER, J.**

**PIERCE, JUSTICE, DISSENTING:**

¶26. Respectfully, I dissent from the majority's interpretation of Mississippi Code Section 99-19-107, and, in turn, its decision to vacate Frederick Bell's sentence under that section.

15

In my opinion, this Court correctly interpreted Section 99-19-107 in *Foster v. State*, 961 So. 2d 670 (Miss. 2007), to apply to classes of persons whose death sentences had been deemed unconstitutional. *Foster* rightly overruled *Abram v. State*, 606 So. 2d 1015 (Miss. 1992), as *Abram* did not have before it the decrees of *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), and *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which categorically prohibit the death penalty for certain classes of offenders. The defendant in *Abram* belonged to no such class and remained subject to the death penalty after his sentence under Section 99-19-107 was reversed and his case remanded by this Court. In short, Section 99-19-107 was not applicable in *Abram* or in any other Mississippi death-penalty case until the Supreme Court's decision in *Atkins*. For this reason, *Abram* carries no weight. And *Foster* properly treated *Abram* accordingly.

¶27.    In the wake of *Atkins* and *Roper*,[6] reading Section 99-19-107 to apply only if this Court or the Supreme Court renders a wholesale declaration that the death penalty in its entirety is unconstitutional, lends itself to the interpretation that the whole is greater than the sum of its parts. As *Foster* recognized, it is not, for purposes of Section 99-19-107. And the question before us need only be taken to its logical conclusion to see that *Foster*'s interpretation of Section 99-19-107 is the correct one.

¶28.    Again, the holdings of *Atkins* and *Roper* prohibit the imposition of death as a punishment for certain classes of individuals, under the Eighth Amendment. Given the High

_____

    [6] *Miller v. Alabama*, ____U.S. ____, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which prohibits a mandatory sentencing scheme of life without parole for juvenile offenders, effectively abrogates *Foster's* disposition. For our purposes here, however, this does not affect *Foster's* interpretation of Section 99-19-107.

Court's Eighth Amendment rationale comprising those two decisions, every conceivable class of individuals has the potential to be included alongside the classes identified in *Atkins* and *Roper*. Were this to occur, the death penalty would have been abrogated piecemeal rather than wholesale without Section 99-19-107 ever going into effect.

¶29. Since *Atkins* and *Roper* were not in existence at the time *Abram* spoke to Section 99-19-107, there was no reason for the *Abram* Court to contemplate such a scenario. The same, however, cannot be said of our Legislature, when it enacted Section 99-19-107 following *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

¶30. As *Foster* concluded, Section 99-19-107 intends to provide for an alternative sentence of life without the possibility of parole for those whose death sentences have been deemed unconstitutional. *Foster*, 961 So. 2d at 672. Because Bell's death penalty was found unconstitutional based on the Supreme Court's ruling in *Atkins*, Section 99-19-107 applies.

¶31. For these reasons, I would affirm Bell's sentence of life without parole under Section 99-19-107.

**WALLER, C.J., RANDOLPH, P.J. AND CHANDLER, J., JOIN THIS OPINION.**